1   WRIGHT, FINLAY & ZAK, LLP
    Darren T. Brenner, Esq. (NBN 8386)
2   Christina V. Miller, Esq. (NBN 12448)
    Yanxiong Li, Esq. (NBN 12807)
3   Lindsay D. Dragon, Esq. (NBN 13474)
    7785 W. Sahara Ave., Suite 200
4   Las Vegas, NV 89117
    (702) 475-7964; Fax: (702) 946-1345
5   dbrenner@wrightlegal.net
    cmiller@wrightlegal.net
6   yli@wrightlegal.net
    ldragon@wrightlegal.net
7   
8   *Attorneys for Plaintiff, Deutsche Bank National Trust Company as Trustee for Morgan Stanley*
    *ABS Capital I Inc. Trust 2006-NC5, Mortgage Pass-Through Certificates, Series 2006-NC5*
9   

10              **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF NEVADA**
11

12   DEUTSCHE BANK NATIONAL TRUST            Case No.: 2:22-cv-00547-GMN-BNW
     COMPANY AS TRUSTEE FOR MORGAN
13   STANLEY ABS CAPITAL I INC. TRUST
     2006-NC5, MORTGAGE PASS-THROUGH        **OPPOSITION TO MOTION TO**
14   CERTIFICATES, SERIES 2006-NC5          **DISMISS [ECF No. 41]; MOTION TO**
                                            **AMEND COMPLAINT; and**
15                          Plaintiff,      **COUNTERMOTION FOR PARTIAL**
                                            **SUMMARY JUDGMENT**
16           vs.

17   NORTH AMERICAN TITLE INSURANCE
     COMPANY, INC. and ROE CORPORATIONS
18   XI through XX, inclusive,

19                          Defendants.

20

21          Plaintiff Deutsche Bank National Trust Company as Trustee for Morgan Stanley ABS

22   Capital I Inc. Trust 2006-NC5, Mortgage Pass-Through Certificates, Series 2006-NC5

23   ("Plaintiff"), by and through its undersigned attorneys, opposes Defendant Doma Title Insurance

24   fka. North American Title Insurance Company, Inc.'s ("NATIC") Motion to Dismiss [ECF No.

25   41] and countermoves for partial summary judgment on its first and second causes of action for

26

27

28

declaratory relief and breach of contract.[1] Plaintiff also moves to amend to assert claims for professional negligence and negligent misrepresentation.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION.**

Following the Nevada Supreme Court's decision in *Deutsche Bank*, the coverage issue in this case is simple.[2] *Deutsche Bank* recognized two potential ways a claim may be covered under CLTA 100 based on provisions in the "at issue" CC&Rs: (1) loss resulting from a covenant in the CC&Rs that grant the HOA assessment lien priority over first deeds of trust <u>and</u> (2) loss resulting from the enforcement of a private restrictive covenant in the CC&Rs. *Deutsche Bank* held that neither ground was present in that case.

Conflating these two separate grounds, NATIC moves to dismiss based on language in *Deutsche Bank* that HOA's superpriority lien *in that case* was solely enforced by NRS 116. *Deutsche Bank* clearly provides there is coverage if the "at issue" CC&Rs contain a superpriority provision, and here, there is no credible dispute that the CC&Rs contain such a provision. *See* ECF No. 1-4 at 52. NATIC already confirmed as much when it evaluated Plaintiff's claim. NATIC correctly found that the reason there is coverage in this case—as opposed to others—is because "Section 18.3(b) of CC&Rs address the priority of the association's lien … triggering the application of the CLTA 100 Endorsement …." ECF No. 1-6 at 152. This is precisely the holding reached in *Deutsche Bank*:

> The plain meaning of [CLTA 100(1)(a) requires some aspect of the <u>at-issue CC&Rs</u>—here, the covenant for maintenance assessments—to cut off, subordinate, or impair the insured's mortgage. However, no language in the pertinent covenant gives the HOA that authority.

*Deutsche Bank*, 536 P.3d at 926. Accordingly, there is coverage under CLTA 100. Partial Summary Judgment should be entered in Plaintiff's favor on Counts 1 and 2 as to coverage.

NATIC's Motion to Dismiss Plaintiff's remaining claims must similarly be denied.

---

[1] Plaintiff abandons its causes based on coverage under CLTA 115.2 Endorsement.
[2] *Deutsche Bank Nat'l Tr. Co. v. Fid. Nat'l Title Ins. Co.,* 139 Nev. Adv. Rep. 45, 536 P.3d 915, 926 (Nev. 2023) ("*Deutsche Bank*").

Plaintiff has pled a valid claim for bad faith because there is coverage. Plaintiff's NRS 686A.310 claims are not time barred. The deadline to bring NRS 686A.310 claims was tolled as a matter of law until the underlying HOA quiet title litigation resolved in August 2020. Plaintiff has pled valid claims under the Nevada Deceptive Trade Practices Act ("NDTPA"). Among other things, NATIC advised that the insured mortgage was protected because the CC&Rs contained a Mortgage Protection Clause ("MPC"). This was false. The particular CC&Rs here contain no MPC.

For similar reasons, leave to amend to assert professional negligence and negligent misrepresentation should be granted. Regardless of whether there is coverage, NATIC and its title agent (North American Title Company) had a duty to fully and *accurately* advise its insured about matters affecting title. NATIC misinformed its insured by stating the CC&Rs contained an MPC. Accordingly, leave to amend should be granted.

## II.    STATEMENT OF UNDISPUTED FACTS.

The following facts are alleged in Plaintiff's operative complaint [ECF No. 1-2] and exhibits attached thereto; most of which are also judicially noticeable from public records.[3]

1.    The subject real property located at 5916 Post Mountain Street, North Las Vegas, Nevada 89031 (the "Property") is part of a common interest community governed by Sierra Ranch

---

[3] This Court can and should take judicial notice of publicly recorded documents. *See* Fed. R. Evid. 201; *see also Harlow v. MTC Fin. Inc.,* 865 F. Supp. 2d 1095, 1097 (D. Nev. 2012) ("When ruling on a motion for summary judgment, the Court may take judicial notice of matters of public record, including recorded documents.") (citing *Disabled Rights Action Comm. v. Las Vegas Events, Inc*., 375 F.3d 861, 866 n.1 (9th Cir. 2004)); *FDIC v. Nev. Title Co*., No. 2:14-cv-01567-JAD-GWF, 2017 U.S. Dist. LEXIS 49356, at *5 (D. Nev. Mar. 30, 2017) ("a court may take judicial notice of complaints and briefs filed in another case to determine what issues were before that court and were actually litigated"). This includes recorded title documents attached to Plaintiff's operative complaint [ECF 1-2]: CC&Rs (ECF 1-4 at 2-108); Deed of Trust (ECF 1-4 at 115-135); Assignment (ECF 1-4 at 137); Notice of Delinquency (ECF 1-4 at 139-140); Notice of Sale (ECF 1-5 at 5-7); Foreclosure Deed (ECF 1-5 at 9-11). This also includes Stipulated Dismissal filed in the underlying quiet title litigation, attached hereto as Exhibit 1. The Declaration of Yanxiong Li, Esq. ("Li Decl.") attached as **Exhibit 3** to this Motion independently authenticates these documents.

1  Homeowners Association ("HOA") subject to that certain Declaration of Covenants, Conditions,

2  and Restrictions ("CC&Rs") recorded August 30, 2005.  ECF No. 1-4 at 2-108, CC&Rs.

3      2.      Under the CC&Rs, each property owner "by acceptance of a deed…is deemed to

4  covenant and agree to pay" to the HOA common expense and other assessments.  *Id.* at 56 [§

5  18.12(a)].  All Assessments…shall be a charge on the land and…a continuing lien upon the Unit

6  against which such assessment is made."  *Id.*

7      3.      The CC&Rs at Section 18.3(b) grants the HOA's lien priority over first security

8  interests for six months' assessments, stating the HOA's lien is "prior to the first security interest

9  described herein…**which would have become due in the absence of acceleration during the**

10  **six (6) months immediately preceding the institution of an action to enforce the lien."**  *See*

11  *id.* at 52 [§ 18.3(b)] (Emphasis added); *see also id.* at 53 [§ 18.3(i)] (HOA's superpriority lien

12  survives any foreclosure under a first security interest).

13      4.      In May 2006, New Century Mortgage Corp. ("NCM") provided a $279,992 loan

14  to Vicent Tes ("Borrower") secured by a deed of trust recorded against the Property ("Deed of

15  Trust").  *See id.* at 115-135, Deed of Trust.

16      5.      The Deed of Trust, "together with note or notes therein described", was

17  subsequently assigned to Plaintiff by NCM.  *See id.* at 137, Assignment.

18      6.      As part of the loan origination, NATIC issued a title insurance policy numbered

19  903259 ("Policy").  *See* ECF No. 1-3 at 2-21, Policy.

20      7.      Schedule B of the Policy ***falsely*** represents that the CC&Rs "provide that a

21  violation thereof shall not defeat the lien of any mortgage or deed of trust made in good  faith for

22  value." ECF No. 1-4 at 4.  The CC&Rs contain no such provision.

23      8.      The Policy contains a CLTA Form 100 Endorsement ("CLTA 100").  *Id.* at 8-9.

24  CLTA 100 provides coverage for loss caused "by reason of":

25      The existence of any of the following:

26      1(a)    Covenants, conditions, or restrictions under which the lien of the mortgage

27      referred to in Schedule A can be cut off, subordinated, or otherwise impaired;
        ...

28

2.    (a)    Any future violations on the land of any covenants, conditions or restrictions occurring prior to acquisition of title to the estate or interest referred to in Schedule A by the insured, provided such violations result in impairment or loss of the lien of the mortgage referred to in Schedule A…;

*Id.*

9.    In or around 2009, Borrower ceased paying assessments to the HOA in violation of Section 18.12(a) of the CC&Rs.  *See* ECF No. 1-4 at 139-140, Notice of Delinquency.

10.    On October 2, 2012, HOA, through its foreclosure agent Leach Johnson Song & Gruchow, caused a Notice of Foreclosure Sale to be recorded, which states a "sale will be made…to satisfy the indebtedness secured by [HOA's lien] as provided in the [CC&Rs][.]".  *See* ECF No. 1-5 at 5-7, Notice of Sale.

11.    Pursuant to the Foreclosure Deed, a non-judicial foreclosure sale occurred on December 12, 2013 ("HOA Sale"), whereby 5916 POST MOUNTAIN TRUST ("HOA Buyer") purchased the Property for $12,200.  *See id.* at 9-11, Foreclosure Deed (Emphasis in original).

12.    On January 8, 2018, Plaintiff made a claim under the Policy to NATIC.  ECF No. 1-6 at 2-147, Claim.

13.    On March 29, 2018, NATIC responded by confirming that coverage exists under CLTA 100 for the Title Claim because of the CC&Rs' priority provision in Section 18.3(b).  *Id.* at 149-155.  Specifically, NATIC explained:

> Section 18.3(b) of the Sierra Ranch's CC&Rs address the priority of the association's lien as being subject to NRS 116.3116(2). Accordingly, North American recognizes the potential for a claim that the CC&Rs in this instance might impair the deed of trust, triggering the application of the CLTA 100 Endorsement subject to all the policy's terms and provisions.

*Id.* at 151.

14.    NATIC further confirmed: "Plaintiff's policy includes the CLTA 100 endorsement specifically insuring against loss in the event of such a super priority claim cutting off the insured deed of trust." *Id.* at 152. NATIC further stated:

> Article XVIII, Section 18.3(b) of Sierra Ranch's CC&Rs states that the association lien is prior to all other liens and encumbrances except as to a first security interest

in the unit, except to the extent permitted under NRS 116.3116(2). **The section goes on to provide that a lien is also prior to such security interests to the extent of assessments due during the 6 months prior to commencement of the lien's enforceable activity. <u>The very reason for the insured's request for, and North American's issuance of CLTA 100 Endorsement, is to provide coverage in the event of such a super priority lien claimed related to the subject CC&Rs.</u>**

*Id.* at 152 (Emphasis added).

15.     NATIC additionally confirmed "the [CLTA 100] endorsement provides coverage in the event of loss incurred by CC&Rs that stand to impair the deed of trust[.]" *Id.* While NATIC agreed there was coverage because of the existence of a superpriority CC&R provision—the same argument presented in the current briefing—NATIC then proceeded to limit the coverage it would provide based on Condition 3 (Notice-Prejudice). *See id.* at 153.[4]

16.     On May 8, 2018, Plaintiff submitted a request for reconsideration, which NATIC denied. ECF No. 1-7 at 2-94, Reconsideration; ECF No. 1-8 at 2-11, Second Denial. In doing so, NATIC reaffirmed its finding that the claim is covered under CLTA 100, stating "[t]he subject insuring provisions and the 100 Endorsement insures against actual loss resulting from liens such as [HOA's lien]. **North American does not dispute that such loss falls within the policy's insuring provisions or the subject endorsement**." ECF No. 1-8 at 4 (Emphasis added).

## III.   DISMISSAL IS INAPPROPRIATE UNDER FED. R. CIV. P. 12(B)(6) BECAUSE PLAINTIFF'S TITLE CLAIM IS COVERED UNDER THE PLAIN MEANING OF CLTA 100.

### A. Motion to Dismiss Standard of Review.

Pursuant to Fed. R. Civ. P. 12(b)(6), dismissal for failure to state a claim is proper only if it is beyond doubt that plaintiff can prove no set of facts in support of its claim that would entitle plaintiff to relief. *See Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000). In addition to allegations in the complaint, the court may consider materials specifically referenced or attached to the complaint without converting the motion into one for summary

---

[4] Neither party has moved on application of Condition 3, which is necessarily a factual issues, and unrelated to coverage. *See Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, 127 Nev. 548, 558, 256 P.3d 958, 965 (Nev. 2011); *see also Pennymac Holdings, LLC v. Fid. Nat'l Ins. Co.*, 2018 Nev. Unpub. LEXIS 721 at *6-7, 134 Nev. 995, 423 P.3d 608, (Nev. 2018).

judgment. *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994); *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426, 430 (9th Cir. 1978). All well-pleaded material facts must be accepted as true and all reasonable inferences drawn in favor of the pleader. *See Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

    **B. The At-Issue CC&Rs Independently Elevates HOA's Lien Priority Over First Deeds of Trust.**

        1. <u>Section 18.3(b) of the CC&Rs Is Sufficient to Create Coverage.</u>

    Paragraph 1(a) of CLTA 100 insures against loss from "[t]he existence of any…[c]ovenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired". ECF No. 1-3 at 8-9. There are two ways an insured mortgage can be impaired by CC&Rs. *See Deutsche Bank*, 536 P.3d at 926 (separately analyzing coverage based on the presence of an "at issue" priority provision and "enforcement of the superpriority piece of" HOA's lien). The CC&Rs can impair the insured mortgage under CLTA 100 "from **either** the priority of a restrictive covenant over the insured interest **or** the enforcement of a restrictive convent." Joyce Palomar, 1 TITLE INS. LAW § 9:4 (2019 ed.) ("*Palomar*") (Emphasis added).

    There is coverage here because the "at issue" CC&Rs expressly give the HOA lien priority over the insured Deed of Trust. As *Deutsche Bank* explains "the plain meaning of [CLTA 100(1)(a)] requires **some aspect of the at-issue CC&Rs—here, the covenant for maintenance assessments—to cut off, subordinate, or impair the insured's mortgage.**" 536 P.3d at 926. (Emphasis added). The Court then immediately undertook an analysis of the at-issue CC&Rs in *Deutsche Bank*, finding "no language in the **pertinent** covenant gives the HOA that authority." *Id.* (Emphasis added). Because the CC&Rs in *Deutsche Bank* did not grant the HOA a superpriority lien, *Deutsche Bank* found that the lender's loss in that case "does not come within the plain meaning of CLTA 100(1)(a)." *Id.*

Unlike *Deutsche Bank*, Section 18.3(b) of the CC&Rs expressly provide the HOA a superpriority lien for up to six months' assessments.[5]  Accordingly, Plaintiff's claim is covered under CLTA 100(1)(a).

2.  NATIC's Coverage Determination is *At Minimum* Admissible Trade Usage.

NATIC reached the same conclusion in its claim decision.  As NATIC explained, the distinction between this case and others—including the more than a hundred cases that have now been dismissed—the CC&Rs here expressly grant the HOA a priority lien.  As detailed in NATIC's claims decision:

- "Section 18.3(b) of the Sierra Ranch's CC&Rs address the priority of the association's lien as being subject to NRS 116.3116(2)."

- "The section goes on to provide that a lien is also prior to such security interests to the extent of assessments due during the 6 months prior to commencement of the lien's enforceable activity."

- "…North American recognizes the potential for a claim that the CC&Rs in this instance might impair the deed of trust, triggering the application of the CLTA 100 Endorsement…"

- "[Plaintiff]'s policy includes the CLTA 100 endorsement specifically insuring against loss in the event of such a super priority claim cutting off the insured deed of trust."

- "The very reason for the insured's request for, and North American's issuance of CLTA 100 Endorsement, is to provide coverage in the event of such a super priority lien claimed related to the subject CC&Rs."

- "[T]he endorsement provides coverage in the event of loss incurred by CC&Rs that stand to impair the deed of trust[.]"

- "North American does not dispute that such loss falls within the policy's insuring provisions or the subject endorsement."

*See* ECF No. 1-6 at 151-152; ECF No. 1-8 at 4.

---

[5] Further, in *Deutsche Bank*, the "pertinent covenant…expressly 'subordinate[s]' its lien 'to the lien of any Eligible Mortgage upon any Lot.'"  536 P.3d at 926.  The CC&Rs in this case contain no such subordination provision.

NATIC points out that under *Deutsche Bank*, coverage cannot be waived.  *See* ECF 41 at 11:15-18 (citing 536 P.3d at 928 n.10).  That rule does not diminish the fact that NATIC already confirmed these CC&Rs are different from most by their express grant of a superpriority at Section 18.3(b).  As NATIC expressly confirmed, the "very reason for the insured's request for, and North American's issuance of CLTA 100 Endorsement, is to provide coverage **in the event of such a super priority lien claimed related to the subject CC&Rs**."  ECF No. 1-6 at 152 (Emphasis added).

Recognizing that contractual language "derive[s] meaning from usage and context," Nevada law authorizes a party to proffer allegations and evidence of "trade usage and industry custom" when interpreting a contract, even before determining if the contract's language is ambiguous.  *Galardi v. Naples Polaris, Ltd. Liab. Co.*, 129 Nev. 306, 310, 301 P.3d 364, 366-67 (Nev. 2013).  As *Galardi* explains:

> Modernly, courts consult trade usage and custom not only to determine the meaning of an ambiguous provision, but also to determine whether a contract provision is ambiguous in the first place. Contract interpretation strives to discern and give effect to the parties' intended meaning. Words derive meaning from usage and context.  It would be passing odd to forbid people to look up words in dictionaries, or to consult explanatory commentaries that, like trade usage, are in the nature of specialized dictionaries in interpreting a written contract. We thus conclude, as other modern courts have, that 'ambiguity is not required before evidence of trade usage can be used to ascertain or illuminate contract terms.

*Id.* (Internal citations omitted).  Thus, "Nevada law permits courts to consider the custom and practices of the trade even when construing a contract that is unambiguous in its terms" in this context.  *Deutsche Bank Nat'l Tr. Co. v. Fid. Nat'l Title Ins. Co.*, 2021 U.S. App. LEXIS 32311, at *3 (9th Cir. Oct. 28, 2021).

    3.  <u>NATIC Relies on Irrelevant Analysis Relating to Enforcement of CC&Rs.</u>

NATIC's Motion to Dismiss focuses almost exclusively on the second part of *Deutsche Bank*: whether "the **enforcement** of a restrictive covenant" created an insurable loss.  *See* ECF No. 41 at 8.  *See Palomar*, at § 9:4; *Deutsche Bank*, 536 P.3d at 926.  In doing so, NATIC conflates *Deutsche Bank*'s analysis on enforcement of a CC&R provision that cuts-off an insured mortgage,

and largely ignores the Court's specific instruction to inspect the at-issue CC&Rs to determine coverage.  *Id.*  NATIC's read of *Deutsche Bank* is not tenable.

The first paragraph of *Deutsche Bank*'s CLTA 100(1)(a) analysis focused on whether there is coverage based on an "at issue" CC&R that provides superpriority.  Finding no such provision in that case, the Court proceeded to separately analyze—in the second paragraph of its CLTA 100(1)(a) holding—whether  <u>enforcement</u> of the CC&Rs created an insurable loss.  *Id.* (stating, "Plaintiff alleges that the enforcement of the superpriority piece of [HOA]'s assessment lien caused its losses.").  The Court found there was no coverage under part two of its analysis because "[w]ithout the statute, an HOA's assessment lien, if foreclosed upon, does not precede and extinguish a first security interest."  *Deutsche Bank*, 536 P.3d at 926.

In essence, there are two ways coverage can exist under CLTA 100(1)(a).  **First,** coverage can exist due to an "at issue" priority provision, like the one present in this case.  **Second,** coverage can exist if there is a CC&R provision that expressly cuts off or impairs a mortgage.  *See Palomar*, at § 9:4 (stating that either/or is sufficient to create coverage).  *Deutsche Bank* made clear that was its holding in its two-paragraph analysis, which concludes as follows:

> CLTA 100(1)(a) did not cover Plaintiff's losses here because **(1)** there was not a CC&R that cut off, impaired, or subordinated Plaintiff's deed of trust, and **(2)** the superpriority assessment lien that ultimately extinguished Plaintiff's deed of trust was a product of NRS 116.3116.

*Id.* (Emphasis added).[6]

NATIC invokes the second part/paragraph of the *Deutsche Bank* analysis regarding whether "enforcement" of the HOA's lien, as opposed to an "at-issue" CC&R, triggered coverage.  *See* ECF No. 41 at 8.  There are multiple problems with NATIC's analysis.

---

[6] *Deutsche Bank* relied on *Palomar* to form its conclusions. *Deutsche Bank*, 536 P.3d at 922 n.3 (citing *Palomar* at §9:1 (2022 ed) to confirm that endorsements "provide affirmative coverage for facts that exist in a transaction which standard title insurance policies have not traditionally addressed"),

**First,** it does not matter whether the CC&Rs contained a provision that provide the HOA's lien "cuts off" the insured mortgage because the first part of the "either/or" test is satisfied by the superpriority provision of the CC&Rs.  NATIC's read of *Deutsche Bank* would render the Court's entire analysis of the "at issue" CC&Rs superfluous.  That is not a credible read of the decision.

**Second,** the HOA's Notice of Sale makes clear the HOA was enforcing the CC&Rs, including Section 18.3(b).  The HOA's Notice of Foreclosure Sale states the "sale will be made…to satisfy the indebtedness secured by [HOA's lien] as provided in the [CC&Rs][.]"  *See* ECF No. 1-5 at 5-7.

**Third,** even if this Court was to find that enforcement of the HOA's lien in this case also traces to NRS 116, that does not matter.  Under the concurrent cause doctrine, so long as a single cause related to a loss is covered, the entire loss is covered.  *See, e.g.*, *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 165-66, 252 P.3d 668, 674-75 (Nev. 2011) (finding coverage where a covered cause, a water leak, resulted in an otherwise excluded loss of earth movement); *IDC Props. v. Chi. Title Ins. Co.*, 974 F. Supp. 2d 87, 101-02 (D.R.I. 2013) (refusing to apply exclusion in title policy where the loss was "caused, at least in part" by a covered cause); *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 104-05, 514 P.2d 123, 130-31 (1973) (finding that coverage is "equally available to an insured whenever an insured risk constitutes simply a concurrent proximate cause of the injuries.  That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act.") (internal citations omitted); *Hughes v. Potomac Ins. Co.*, 199 Cal. App. 2d 239, 244, 18 Cal. Rptr. 650, 652 (1962).  Accordingly, there is coverage under CLTA 100(1)(a).

### C.  CLTA 100(2)(a) Also Provides Coverage.

The analysis of coverage under CLTA 100(2)(a) is simple.  Paragraph 2(a) of CLTA 100 insures against loss from "[a]ny future violations on the land of any [CC&Rs]."  ECF No. 1-3 at 8 (Emphasis added).  *Deutsche Bank* held there was no coverage under CLTA 100(2)(a) "[b]ecause the losses did not arise by reason of a violation of a CC&R, the policy does not provide coverage under CLTA 100(2)(a)."  *Id.* at 926-27.  For all the reasons noted above, the

superiority component of HOA's lien was not merely statutory. The losses arose "by reason of a violation of" Section 18.3(b). Accordingly, coverage exists under CLTA 100(2)(a).

**D.  NATIC's Post-Policy Lien Arguments Are Irrelevant to CLTA 100 Coverage.**

1.  Coverage Under CLTA 115.2 Is Not At Issue.

NATIC spends considerable bandwidth arguing that the HOA's lien is post policy to support is claim  there is no coverage under CLTA 115.2. Plaintiff does not dispute for purposes of this case that *Deutsche Bank'*s finding means no coverage exists under CLTA 115.2. CLTA 115.2 provides coverage only for a priority lien that exists "at Date of Policy." *See Deutsche Bank,* 536 P.3d at 923 ("the applicability of CLTA 115.2 depends firstly on the existence of an assessment lien at the date of policy."). Plaintiff has abandoned its claim under CLTA 115.2 in this case.

2.  Coverage Under The Policy's Standard Insuring Provisions Is Not At Issue.

Similarly, Plaintiff has not asserted there is coverage under the Policy's Standard Insuring Provisions. The Policy is made up of six parts: (1) standard covered risks (aka Standard Insuring Provisions); (2) preprinted Exclusions from Coverage, which list standard coverage exclusions; (3) conditions and stipulations; (4) Schedule A, which describes the Property and amount of insurance; (5) Schedule B, which lists, in two parts, coverage exceptions specific to the Property based on Commonwealth's review of title; and (6) endorsements that return coverage that was subject to the preprinted exclusions or excepted from coverage. *See Nationwide Life Ins. Co. v. Commonwealth Land Title Ins*. Co., 579 F.3d 304, 308 (3rd Cir. 2009); *see generally*, ECF No. 1-3 at 2-21.

Plaintiff has not sought coverage under the Standard Insuring Provisions. Plaintiff's claims are based solely on the CLTA 100 Endorsement. Endorsements are an upsell to coverage under standard risks; "for an additional price" the insured can purchase endorsements that increase coverage under the policy. *See Nationwide*, 579 F.3d at 308 (Emphasis added) (citing Joyce D. Palomar, 1 *Title Insurance Law* §§ 5.17--9.4 (2005); Amy W. Beatie & Arthur R. Kleven, *The Devil in the Details: Water Rights and Title Insurance*, 7 U. Denver Water L. Rev.

381, 398-400 (2004); Charles B. DeWitt, III, *Title Insurance: A Primer*, 3 Tenn. J. Prac. & Proc. 15, 18--19 (2001)).  As *Deutsche Bank* explains,

> An endorsement to an insurance policy generally either "provide[s] affirmative coverage for facts that exist in a transaction which standard title insurance policies have not traditionally addressed" or "modif[ies] the effect of preprinted policy exclusions or exceptions."

*Deutsche Bank*,  536 P.3d at 922 n.3 (Citing 1 Joyce Palomar, Title Insurance Law § 9:1 (2022 ed.); *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 63 Cal. Rptr. 3d 816, 838 (Ct. App. 2007)).

Accordingly, it does not matter if the Policy's preprinted Exclusion for post-policy defects, Exclusions 3(d) negates coverage under the Standard Insuring Provisions , Plaintiff has not sought coverage under the standard insuring provisions.  *See* ECF No. 41 at 5-6.  Accordingly, Exclusion 3(d) is not relevant to this dispute.

   3.   <u>That The Policy Provides Coverage "As Of" Date Of Policy Does Not Matter</u>.

To further muddy the waters, NATIC also references the fact that the policy's standard insuring provisions provide coverage "as of Date of Policy."  ECF No. 41 at 5.  This argument is a strawman for two reasons.  **First,** Plaintiff does not seek coverage under the Policy's Standard Insuring Provisions.  **Second,** even if the Standard Insuring Provisions were relevant (they are not), the phrase "as of" refers to when coverage starts, not when it ends.

"Date of Policy" is a defined term under the Policy.  This defined term refers to when the Policy was issued on "June 8, 2006 at 02:26 PM".  ECF No. 1-3 at 2.  The Policy simply provides that it "insures, as of Date of Policy" against a covered loss.  The Policy's Standard Insuring Provisions contain no requirement that the HOA's lien is fully enforceable on that date. The Standard Insuring Provisions include coverage for the "unenforceability of the lien of the insured mortgage" and the "priority of any lien or encumbrance over the lien of the insured mortgage" among other provisions.  ECF No. 1-3 at 20.  The coverage provided by the Standard Insuring Provisions is a start date, not an end date.  The Policy expressly states "the coverage of this policy shall continue in force as of Date of Policy" even after title is acquired by another insured entity

1  or conveyed to any insured.  ECF No. 1-6 at 81 (Condition 2(a) and 2(b)).  Coverage ends only if

2  a non-insured purchases an interest in the estate or purchases the indebtedness secured by the

3  Deed of Trust.  *Id.* At Condition 2(b).  Otherwise, NATIC's duties to defend and indemnify

4  remain, until it has exhausted the Amount of Insurance under the Policy.  *Id.* At Conditions 6 and

5  9.

6      Other coverage provisions within the Standard Insuring Provisions confirm that "as of"

7  does not mean "prior to."  Coverage provision 7(a) insures "statutory liens for services, labor or

8  material [mechanics liens] . . . arising from an improvement or work related to the land . . .

9  commenced ***prior to*** Date of Policy . . ."  ECF No. 1-3 at 20 (Emphasis added).  The words "prior

10  to" Date of Policy as used in the Standard Insuring Provisions necessarily means something

11  different than "as of" Date of Policy under the doctrine of *noscitur a sociis*.  *Fourth St. Place,*

12  *Ltd. Liab. Co. v. Travelers Indem. Co*., 270 P.3d 1235, 1241 (2011) ("As we interpret an insurance

13  policy as a whole . . . we apply the rule of *noscitur a sociis*, which instructs us to ascertain the

14  meaning of terms in the Policy by referencing the terms with which they are associated.") (citing

15  *Am. Excess Ins. Co. v. MGM Grand Hotels*, 729 P.2d 1352, 1354 (1986); *Orr Ditch Co. v. Dist.*

16  *Ct*., 178 P.2d 558, 562 (1947)). Provision 7 of the Standard Insuring Provisions demonstrates

17  NATIC knows how to draft a provision that clearly identifies whether and when coverage applies

18  for a defect "prior" or "subsequent" to Date of Policy.  ECF No. 1-3 at 20.  An insurance policy

19  may restrict coverage only if the policy's language "clearly and distinctly communicates to the

20  insured the nature of the limitation."  *Vitale v. Jefferson Ins. Co.,* 594, 5 P.3d 1054, 1057 (2000)

21  (Citation omitted).  The phrase "as of Date of Policy" does not restrict coverage in the manner

22  NATIC suggests.

23      4.  CLTA 100 Does Not Concern or Care on Whether The HOA's Lien Is Post-Policy.

24      NATIC's brief does not cogently argue that coverage under CLTA 100 turns on whether

25  the lien is post policy.  Under the heading of its CLTA 115.2 analysis, NATIC's brief contains a

26  single conclusory assertion that *Deutsche Bank* "went on two [sic.] explain why two common

27  endorsements (the CLTA 1115.2 and the CLTA 100) did not cover post-date-of-policy

28  assessment liens, either."  ECF No. 41 at 7.

Perhaps NATIC's reference to CLTA 100, in its section on coverage for CLTA 115.2, was one of a couple typos in that same sentence.  As NATIC goes on to explain in the next paragraph of the same section, "the applicability of CLTA 115.2 depends firstly on the existence of an assessment lien at the date of policy."  ECF No. 41 at 7 (citing *Deutsche Bank*, 536 P.3d at 923).  As noted above, for purposes of this matter, Plaintiff has abandoned its claim for coverage under CLTA 115.2 following *Deutsche Bank*.

To the extent NATIC intends its protean post-policy lien arguments to apply to CLTA 100, NATIC's argument is woefully incorrect.  Policy endorsements, particularly CLTA 100, cover future risks. As NATIC is well-aware:

> It is sometimes asserted that title insurance insures only "retrospectively" or against matters arising or attaching prior to the date of the title insurance policy.  While this is often true, it is not always so and depends entirely on the endorsements, future advance endorsements, option endorsements…[and] **restriction violation coverage** …

James L. Gosdin, Title Insurance: *A Comprehensive Overview*, at p. 87 (3d ed. 2007) (Emphasis added); *see also BB Syndication Servs., Inc. v. First Am. Title Ins, Co.*, 780 F.3d 825, 827 (7th Cir. 2015).

Curiously, NATIC directs this Court to *BB Syndication* to support its claim that title policy coverage is always retrospective.  ECF No. 41 at 2.  *BB Syndication* is inapposite to NATIC's position.  *BB Syndication* says "although title insurance generally covers only liens arising  from work performed prior to the policy date**, it sometimes also includes coverage for liens … subsequent to the policy date**."  780 F.3d at 831-32 (referring to post-policy coverage for mechanics liens).

CLTA 100, by its express terms, provides forward-looking coverage.  CLTA 100(1)(a) provides coverage for an insured lien that "**can be** cut off, subordinated or impaired."  ECF No. ECF No. 1-3 at 8.  CLTA 100(2)(a) expressly covers "**future** violations" of the CC&Rs.  *Id.* (Emphasis added).  CLTA 100 contains no requirement that the CC&Rs exist at Date of Policy, but even if it did, the subject CC&Rs, including Section 18.3(b), were recorded before the Policy was issued.  The only "at Date of Policy" limitation in CLTA 100 is to confirm coverage for

environmental protection liens "recorded in the public records at Date of Policy[,]" which is significant only to imply a conscious decision to omit "at Date of Policy" limitation for assessment lien violations by the contracting parties.  *Id.* at 9; *see also Century Sur. Co. v. Casino W., Inc*., 130 Nev. 395, 398, 329 P.3d 614, 616 (Nev. 2014) ("exclusions must be drafted so that it "clearly and distinctly communicates to the insured the nature of the limitation").[7]  Thus, it is irrelevant for CLTA 100 purposes whether the HOA's lien is post-policy.

### E.  Complaint Adequately States a Claim for Bad Faith.

NATIC's Motion to Dismiss Plaintiff's Bad Faith claim similarly lacks merit because it is predicated entirely on flawed application of *Deutsche Bank* to the at-issue CC&Rs in this case.  *See* ECF 41 at 10-11.  Further, *Deutsche Bank* resolved the lender's bad faith and duty to defend claims based solely on that Court's finding of no coverage:

> [W]e affirm the court's dismissal of the claims for declaratory judgment and breach of contract, as the policy does not provide coverage for Deutsche Bank's losses resulting from the enforcement of the super priority portion of an HOA assessment lien.  We **likewise** affirm the district court's dismissal of the claim for breach of the covenant of good faith and fair dealing…  **For similar reasons**, we conclude that the district court properly rejected Deutsche Bank's claim that NATIC breached its duty to defend Deutsche Bank in the litigation with TRP.

*Deutsche Bank*, 536 P.3d at 927.  No independent reason was given to support affirmance of lower court's dismissal of these claims.  However, as analyzed above, there is coverage under the standard articulated in *Deutsche Bank* based on the CC&Rs' superpriority provision in this case, which is further bolstered by NATIC's own claim decisions.  Accordingly, NATIC's request to dismiss bad faith claim must be denied.

---

[7] NATIC's counsel has also argued in other matters that the Nevada Supreme Court's *unpublished* disposition in *PennyMac* states that Exclusion 3(d) can be applied to CLTA 100.  Notably, NATIC does not make that claim here.  To the extent NATIC does so in any reply it files, *PennyMac* was unpublished for a reason.  In *PennyMac*, the lender exclusively argued that Exclusion 3(d) was irrelevant because the HOA's lien was pre-policy.  That was not the argument presented in *Deutsche Bank* or here.  Any such argument related to *PennyMac* should be rejected because it was not raised in NATIC's Motion to Dismiss.  To the extent it is raised in opposition to Plaintiff's Countermotion for Summary Judgment, Plaintiff will address in its reply

**F.  Plaintiff Adequately and Timely Alleged Claims for Violation of NRS 686A.310.**

1.  Plaintiff Adequately Alleged Unfair Claims Practices

NATIC's reliance on *Deutsche Bank* against Plaintiff's unfair practices claims fares no better.  *See* ECF No. 41 at 14-15.  As a threshold matter, *Deutsche Bank* did not address claims under subsection (1)(b) that Plaintiff alleges in this action.  *See generally*, *Deutsche Bank*, 536 P.3d at 927-28.  Regarding the remaining subsections under NRS 686A.310—(1)(a), (c)-(f), (n)—pleading defects discussed in *Deutsche Bank* are irrelevant to Plaintiff's operative complaint for several reasons.  **First**, Plaintiff's claims under (1)(a), (c), (e) in this case are not premised on NATIC's denial of coverage.  *See Deutsche Bank*, 536 P.3d at 927 ("…[insured] alleges that Fidelity's denial of coverage violated NRS 686.310(1)(a), (1)(c), and (1)(e)…[b]ut Fidelity did not improperly deny coverage under the policy").  In fact, as discussed, NATIC never denied that Plaintiff's Claim was covered under CLTA 100 before this litigation.  *See* ECF No. 1-6 at 152; ECF No. 1-8 at 4.  Instead, Plaintiff's claims under subsection (1)(a) are premised on NATIC misrepresenting "pertinent facts…relating to" the extent of its liability for the covered loss such as NATIC's failure to identify that CC&Rs did not contain any mortgage protection clause and (ECF No. 1-2, ¶¶217-218), its assertion that receipt of the Notice of Default showed "actual knowledge" under Condition 3 (*Id*., ¶¶144-146), its assertion that it would have cured the entire HOA lien (*Id*., ¶¶149-150), among others.  Additionally, this Court may infer from well-plead factual allegations relating to NATIC's untimely coverage decision that it failed to "adopt and implement reasonable standards for prompt investigation and processing of claims".  *See Caltex*, 824 F.3d at 1159 (in deciding motions to dismiss under Rule 12(b)(6), this court must draw all inferences in favor of the non-movant); *see also* ECF No. 1-2, ¶¶159-161, 219.  Accordingly, the complaint adequately alleges facts going to NATIC's breaches of subsections (1)(a), (c), (e).

**Second**, Plaintiff clearly alleges in support of its subsection (1)(f) claim that NATIC has "offer[ed] substantially less than" what Plaintiff seeks to recover in this litigation.  *See* ECF No. 1-2, ¶¶149-152.  Contrary to NATIC's suggestion (ECF No. 41 at 14:24-28), *Deutsche Bank* does not require lenders to plead that they have actually recovered amounts claimed.  *Deutsche Bank* merely found that the lender in that case failed to explain how subsection (1)(f) was violated as

the insurer in that case never offered a substantially lesser amount, but simply denied the claim. *See Deutsche Bank*, 536 P.3d at 920, 928.  That is not the case here. Plaintiff adequately alleges that NATIC misrepresented the extent of prejudice and offered to pay only a portion of the HOA's lien ($2,343) to resolve its liability, despite the Policy requiring NATIC to defend and/or indemnify in full.

**Third**, *Deutsche Bank* is inapposite because Plaintiff's claims under (1)(d), (n) concern NATIC's initial claim denial, not its handling of reconsideration request.  *Cf. Deutsche Bank*, 536 P.3d at 928.  *Deutsche Bank* affirmed dismissal of the lender's claims under these subsections because lender cited no authority that "these subsections pertain to an internal appeal of a claim denial or require an insurer to entertain a request for reconsideration".  *Id*.  Here, Plaintiff's subsection (1)(d) claim concerns NATIC's initial claim denial, which found potential coverage under CLTA 100.  *See* NRS 645.310(1)(d) ("Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured"); *see also* ECF No. 1-2, ¶220.  There is no straight-face argument that this letter is not covered under the plain language of subsection (1)(d).

Similarly, Plaintiff's subsection (1)(n) claim concerns NATIC's explanation of the bases for refusing to defend after finding the claim is covered.  *See* NRS 645.310(1)(n) ("Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim"); *see also* ECF No. 1-2, ¶¶131-133, 223.  NATIC was obligated to support such denial with facts sufficient to demonstrate applicability of Condition 3. Condition 3 requires a showing of actual knowledge. **Cite pennymac.** NATIC's conclusory assertion of constructive knowledge was not sufficient. NATIC also failed to show actual prejudice. It merely assumed that  it could pay the amount of the Notice of Default (rather than the amount in the Notice of Sale or the amounts required to litigate whether the HOA's lien was satisfied).  Plaintiff's allegations must be accepted as true at this stage Accordingly, NATIC's Motion to Dismiss must be denied.

///

2.  Plaintiff Timely Filed its Unfair Claims Practices Complaint

NATIC also argues that Plaintiff's NRS 686A.310 claims are time-barred because those claims necessarily accrued when it denied coverage on March 29, 2018.  *See* ECF No. 41 at 13:14-18 (citing NRS 11.190(3)(a)).  However, Nevada follows the discovery rule for accrual of certain tort claims for which facts only later become known.  *Siragusa v. Brown*, 114 Nev. 1384, 1392, 971 P.2d 801, 806 (Nev. 1998).  In this setting, the statute of limitations does not start to run until the underlying litigation has been resolved.  *Home Sav. Ass'n v. Aetna Cas. & Sur. Co.*, 109 Nev. 558, 565, 854 P.2d 851, 855 (Nev. 1993) ("The statute of limitations on a claim against an insurer for breach of its duty to defend commences when a final judgment in the underlying litigation against the insured is entered."); *see also Lambert v. Commonwealth Land Title Ins. Co.*, 53 Cal. 3d 1072, 1081, 811 P.2d 737, 742 (Nev. 1991) (finding insured's claims against insurer to establish coverage are tolled until underlying lawsuit is resolved); *Boyd Bros. Transp. Co. v. Fireman's Fund Ins. Companies*, 540 F. Supp. 579, 583 (M.D. Ala. 1982), *aff'd*, 729 F.2d 1407 (11th Cir. 1984) ("A rule requiring the insured to sue [its insurer] in regard to one part of a case while the rest of the litigation is ongoing would mire the courts in a multiplicity of lawsuits and lead to speculative and possibly conflicting results").

Here, the underlying quiet title litigation resolved in August 2020.  *See* **Exhibit 1** attached hereto, Stipulated Dismissal.   This case was timely filed within the three-year statute of limitations on March 29, 2022 (exclusive of special Covid orders tolling the deadline even further) as tolled by *Home Sav. Ass'n*.

Moreover, NATIC ignores that Plaintiff's NRS 686A claims are grounded, in part, upon its intentional misrepresentation of facts and law relating to coverage.  *See* ECF No. 1-2, ¶¶176-178; *see also* NRS 11.190(3)(d) (as to "an action for relief on the ground of fraud…the cause of action in such a case shall be deemed to accrue upon the discovery by the aggrieved party of the facts constituting the fraud …"); *U.S. Bank Nat'l Ass'n v. Fid. Nat'l Title Grp., Inc.*, No. 2:21-cv-0388-JAD-EJY, 2022 U.S. Dist. LEXIS 232418, at *10 (D. Nev. Dec. 27, 2022) (concluding that "a state court might conclude, that deadlines for [the bank's NRS 686A.310 claims] were tolled during the underlying quiet title case or until the bank discovered the misrepresentations and

concealments [of internal guides and manuals that concedes coverage], rendering those claims timely."). NATIC's failure to address these allegations concedes the claim is timely. *See* LR 7-2(d) (failure to file points and authorities supporting the motion constitutes consent to its denial).

### G. NATIC Fails to Explain Why Plaintiff's NDTPA Claims are Insufficient.

Plaintiff acknowledges that *Deutsche Bank* found the lender's deceptive trade practices allegations in that case to have been deficient. *See Deutsche Bank*, 536 P.3d at 927 n.9. However, the operative complaint in this case contains detailed allegations for its NDTPA claims (s*ee* ECF No. 1-2, ¶¶206-214), including the fact that NATIC told the lending community there was coverage for the subject loss, among others. NATIC's failure to address these allegations require denial of its Motion to Dismiss. *See* LR 7-2(d).

Under NRS 598.0915, conduct constitutes deceptive trade practices if defendant "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith" and "[k]nowingly makes any other false representation in a transaction." NRS 598.0915(5) and (15). NATIC knowingly misrepresented to its insured under the Policy, including Plaintiff, that the subject CC&Rs included a Mortgage Protection Clause. ECF No. 1-2, ¶ 211. Exclusion 15 of Schedule B claimed that the HOA's CC&Rs "provide that a violation thereof shall not defeat the lien any mortgage or deed of trust made for good faith and for value." ECF No. 1-3 at 4. NATIC's assertion is false. This provision, which is commonly known as a Mortgage Savings or Protection Clause, does not exist in the subject CC&Rs. NATIC, and its agent North American Title Company, misrepresented that the CC&Rs had a Mortgage Protection Clause.

NATIC also misrepresented the availability of coverage under CLTA 100 for the subject loss. NATIC has promulgated publicly available underwriting instructions that confirm the availability of coverage under CLTA 100. **Exhibit 2** attached hereto, NATIC Bulletin. As example, in publically an article authored by NATIC's Vice President and New England Regional Underwriting Counsel, Ms. Lony-Ann Sheehan, Ms. Sheehan instructed, "[i]n states where statutes allow the lien to take priority over mortgages or deeds of trust, agents should take when

asked to issue endorsements to a loan policy that insure mortgage priority over HOA or condominium assessments." *Id*. at 3. Ms. Sheehan specifically flagged ALTA 9/CLTA 100 as one such endorsement that agents should consult underwriting counsel before issuing in states where HOA liens are afforded superpriority. *Id*. Ms. Sheehan also cautioned against including offering "affirmative coverage over liens created in covenants, conditions and restrictions." *Id*. NATIC has other marketing materials and/or underwriting bulletins that confirm the availability of coverage it is yet to disclose in this case. At this stage, Plaintiff's allegations must be accepted as true.

### H.  Leave to Amend Should Be Granted.

NATIC preemptively asks this Court to deny leave to amend. *See* ECF No. 41 at 15-16. However, to the extent this Court determines that any specific claim could benefit from additional factual allegations, leave to amend should be freely granted to Plaintiff. Particularly as NATIC attempts to "sandbag" Plaintiff with entirely new defenses to coverage—e.g., Exclusion 3(d)— asserted for the first time in this litigation. *See generally* ECF No.s 1-6, 1-8. Further, there has been no prior amendments required of Plaintiff in this case.

Plaintiff is at minimum entitled to amend to assert negligence and negligent misrepresentation claims. As *Palomar* explains, "[m]ost courts have found that a title insurance company has a duty in tort to search for and disclose all recorded title defects" based on professional negligence or negligent misrepresentation theory. *Palomar* at § 12:5. This is because "once the title insurer assumes the responsibility of performing *some* sort of title search and disclosing *some* defects, the company has a duty to the parties who rely on those services to search and disclose fully **and accurately**." *Id.* (Emphasis added) (citing *100 Investments Ltd. Partnershp v. Columbia Town Center Title Co*., 430 MD 197, 60 A.3d 1 (2013) ("We emphasize the duty in tort is separate and independent of a contractual duty, and is a duty undertaken by the title examiner to use a reasonable skill and diligence"); *MacDonald v. Old Republic Nat'l Title Ins. Co*., 882 F. Supp. 2d 236, 244 (D. Mass. 2012) (declining to dismiss insured's action for negligent misrepresentation); *Great American Mortg. Investors v. Loousvill Title Ins. Co.*, 597 S.W.2d 425 (Tex. Civ. App. Fort Worth 1980 (July 30, 1980) (title insurance company which

represented no deed restrictions existed was held liable in tort for damages caused by negligent misrepresentation); *Banville v. Schmidt*, 37 Cal. App. 3d, 92, 105, 112 Cal. Rptr 126, 134, 135 (3rd Dist. 1974) (holding title insurer liable for negligent misrepresentation of title to mortgaged property).

In Nevada, one who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Barmettler v. Reno Air, Inc*., 114 Nev. 441, 449, 956 P.2d 1382, 1387 (Nev. 1998); *see also Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nevada*, 94 Nev. 131, 134, 575 P.2d 938, 940 (Nev. 1978).

To assert a claim for professional negligence, a party must show: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) proximate causal connection between the negligent conduct and resulting injury; and (4) actual loss or damage resulting from the professional's negligence. *Boesiger v. Desert Appraisals, Ltd. Liab. Co.,* 135 Nev. 192, 194, 444 P.3d 436, 439 (2019); *Morgano v. Smith,* 110 Nev. 1025, 1028 n.2, 879 P.2d 735, 737 n.2 (Nev. 1994). The facts of this case demonstrates Plaintiff's ability to plead the elements of both negligent misrepresentation and professional negligence because of NATIC's failure to *accurately* disclose the encumbrance on title as evidenced by NATIC's false claim in Schedule B that the HOA's CC&Rs includes a Mortgage Protection Clause.

Pursuant to Fed. R. Civ. P. 15(a), a court must freely give permission to amend a pleading "when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Moreover, "in the absence of a reason such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'", leave

sought should be freely granted.  *Wilson v. United States*, No. 2:18-CV-1241 JCM (NJK), 2023 U.S. Dist. LEXIS 95377, at *3 (D. Nev. May 31, 2023) (quoting *Foman*, 371 U.S. at 182); *see also Mo. ex rel. Koster v. Harris*, 847 F.3d 646, 655 (9th Cir. 2017) ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review that the complaint could not be saved by any amendment.").  Leave to amend should be allowed for the reasons mentioned.

### IV.  PARTIAL SUMMARY JUDGMENT SHOULD ENTER DECLARING COVERAGE UNDER CLTA 100.

Under Fed. R. Civ. P. Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159, 90 S. Ct. 1598, 1609 (1970); *see also Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982), *cert. denied*, 460 U.S. 1085, 76 L. Ed. 2d 349, 103 S. Ct. 1777 (1983).  Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

As analyzed *supra*. at III.B., applying *Deutsche Bank* to the at-issue CC&Rs in this case entitles Plaintiff to judgment declaring that Plaintiff's Claim is covered under CLTA 100 Endorsement because the CC&Rs does contain a superpriority provision that impairs the insured mortgage.  *See* ECF No. 1-4 at 52.  The relevant priority provision at Section 18.3(b) indisputably provides the HOA's lien priority over first deeds of trust for six months' assessments.  *See id*. Thus, Plaintiff is entitled to judgment as a matter of law declaring coverage.  *Oella Ridge Tr. v. Silver State Sch. Credit Union*, 137 Nev. Adv. Rep. 80, 500 P.3d 1253, 1255 (Nev. 2021) ("When the facts in a case are not in dispute, contract interpretation is a question of law") (citing *Galardi v. Naples Polaris, LLC*, 129 Nev. 306, 309, 301 P.3d 364, 366 (Nev. 2013)).

## V.    CONCLUSION.

For the foregoing reasons, this Court should deny NATIC's Motion to Dismiss in its entirety.  Similarly, partial summary judgment should enter declaring coverage for Plaintiff's Claim under the subject CLTA 100 Endorsement.

DATED this 2nd day of April, 2024.

WRIGHT, FINLAY & ZAK, LLP

*/s/ Yanxiong Li, Esq.*
Darren T. Brenner, Esq. (NBN 8386)
Christina V. Miller, Esq. (NBN 12448)
Lindsay D. Dragon, Esq. (NBN 13474)
Yanxiong Li, Esq. (NBN 12807)
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
*Attorneys for Plaintiff, Deutsche Bank National Trust Company as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-NC5, Mortgage Pass-Through Certificates, Series 2006-NC5*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of WRIGHT, FINLAY & ZAK, LLP and that service of the foregoing **OPPOSITION TO MOTION TO DISMISS [ECF No. 41]; MOTION TO AMEND COMPLAINT; and COUNTERMOTION FOR PARTIAL SUMMARY JUDGMENT** was made on the 2nd day of April, 2024, to all parties and counsel identified on the CM/ECF No. System via Electronic Notification.

*/s/ Faith Harris*
An Employee of WRIGHT, FINLAY & ZAK, LLP

**EXHIBIT LIST**

| Exhibit 1 | Stipulation for Dismissal |
|-----------|---------------------------|
| Exhibit 2 | NATIC Bulletin |
| Exhibit 3 | Declaration of Yanxiong Li, Esq. |